IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| Michael W. Ryan, Rowena B. Madrigal, and Beverly M. Bowker, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 3:05-cv-64 |
| United States of America, | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is defendant's motion to dismiss Michael W. Ryan, Rowena B. Madrigal, and Beverly M. Bowker's ["plaintiffs"] action brought pursuant to the Federal Torts Claims Act (Doc. #16). For the following reasons, the court **GRANTS** defendant's motion to dismiss.

**I.    Factual Background**

This case arises from plaintiffs' allegation that in 1946 two infant girls were switched after their births at an Indian Health Service hospital and sent home to be raised by the incorrect set of parents. Plaintiffs are the two now-grown infants and one of the fathers. Plaintiffs seek damages for emotional injuries.

On July 27, 1946 at 3:55 a.m., Susie Slow (also known as Susie Slow Bowker) gave birth to an infant girl at the Standing Rock Hospital in Fort Yates, North Dakota. The birth certificate for the infant named Lillian Marie Bowker lists Susie Slow as the mother and Virgil Bowker as the father. Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss [hereinafter

1

"Plaintiffs' Opposition"] (Doc. #21) at Ex. 4.  Susie and Virgil took an infant girl home from the hospital and called her Beverly, believing she was the infant named Lillian Marie Bowker born to Susie.  They raised Beverly as their daughter and had four more children.  Susie and Virgil are both deceased.  Beverly claims that she is the biological daughter of Grace Medicine and Michael Ryan.  A DNA paternity test performed in July 2002 showed a 99.4% probability that Michael is the father of Beverly.  A DNA test performed in January 2004 confirmed these results, this time showing a 99.998% probability that Michael is the father of Beverly.[1]  Plaintiffs' Opposition (Doc. #21) at Ex. 6.

On July 27, 1946 at 6:50 a.m., Grace Medicine gave birth to an infant girl at the Standing Rock Hospital in Fort Yates, North Dakota.  The birth certificate for the infant named Rowena Beatrice Ryan lists Grace Medicine as the mother, and the blank for the father's name originally contained the typed phrase "Not legally determined."  Plaintiffs' Opposition (Doc. #21) at Ex. 2.  This phrase was crossed out and the name "Michael W. Ryan" was written.  Id.  On the birth certificate, the infant's name was typed as Rowena Beatrice Medicine; however, the last name "Medicine" was crossed out and "Ryan" was written.  Id.  Grace Medicine took an infant girl home from the hospital and called her Rowena, believing she was the infant Grace had delivered.  Grace raised Rowena as her daughter, and Michael considered Rowena to be his daughter.  A DNA paternity test performed in January 2004 showed a 0% probability that Michael is the father of Rowena.  Plaintiffs' Opposition (Doc. #21) at Ex. 6.  Rowena claims she is the

---

[1] The court notes the record contains no medical evidence that establishes Grace is the biological mother of Beverly.

biological daughter of Susie Slow and Virgil Bowker.[2]

## II.     Legal Standards

Defendant moves to dismiss plaintiffs' complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction.

Dismissal under Rule 12(b)(1) is appropriate if the plaintiff has failed to satisfy a threshold jurisdictional requirement. See Trimble v. Asarco, Inc., 232 F.3d 946, 955 n. 9 (8th Cir. 2000). In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged either on its face or on the factual truthfulness of its averments. See Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993). "'The district court has the authority to consider matters outside the pleadings on a motion challenging subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).'" Deuser v. Vecera, 139 F.3d 1190, 1191 n.3 (8th Cir. 1998) (quoting Drevlow v. Lutheran Church, Mo. Synod, 991 F.2d 468, 470 (8th Cir. 1993)).

Defendant's motion to dismiss rests on the argument that plaintiffs' suit is time barred. The Federal Torts Claims Act (FTCA) provides that a claim must be filed with the appropriate agency within two years after the claim accrues. 28 U.S.C. § 2401(b). Defendant argues the statute of limitations is a jurisdictional requirement. Plaintiffs contend the statute of limitations is an affirmative defense. Given the Eighth Circuit's recent holding in a FTCA case on this issue, the court concludes compliance with the statute of limitations is a jurisdictional

---

[2] Again, the court notes the record contains no medical evidence that establishes a maternal relationship between Rowena and Susie and/or a paternal relationship between Rowena and Virgil. Although Susie and Virgil are deceased, the couple had four other children, and the court assumes the DNA of one or more of the siblings could have been compared to the DNA of Rowena to definitely establish the identity of Rowena's biological parents. As it now stands, the record only contains medical evidence excluding Michael Ryan as Rowena's biological father.

requirement.  See T.L. v. United States, 443 F.3d 956, 959 (8th Cir. 2006) (stating the government's motion to dismiss or alternatively for summary judgment should have been considered as a motion to dismiss pursuant to Rule12(b)(1)).  After surveying the previous and often conflicting decisions, the Eighth Circuit held:  "Because a plaintiff's compliance with the statute of limitations is prerequisite to the district court's jurisdiction over a suit against the United States under the FTCA, the court must resolve material issues of disputed fact and determine whether the action was timely filed."  Id. at 961 (citing Osborn v. United States, 918 F.2d 924, 729-30).[3]

In general, a FTCA claim "accrues at the time of injury."  Motley v. United States, 295 F.3d 820, 822 (8th Cir. 2002).  However, "in medical malpractice cases, the claim accrues when the 'plaintiff actually knew, or in the exercise of reasonable diligence should have known, the cause and existence of his injury.'"  Id. (quoting Wehrman v. United States, 830 F.2d 1480, 1483 (8th Cir. 1987)).  Considering the nature of this case, the court finds it appropriate to apply the "discovery rule" of medical malpractice cases to evaluate when plaintiffs' claim accrued.  See

---

[3] The recent Eighth Circuit case also addressed the issue of equitable tolling, an issue which this court addresses later in this opinion:

> [The] availability of equitable tolling depends on congressional intent, and is not necessarily available as a matter of general equitable power in all actions against the government. . . . [T]he rule of equitable tolling applies in FTCA cases only because Congress intended it to apply. It is thus one of the "terms" of the government's consent to be sued, Sherwood, 312 U.S. at 586, and there is no inconsistency between viewing compliance with the statute of limitations as a jurisdictional prerequisite and applying the rule of equitable tolling. . . . . We thus align ourselves with several other circuits in holding that considerations of equitable tolling simply make up part of the court's determination whether an action falls within the scope of the waiver of sovereign immunity granted by Congress, and thus within the jurisdiction of the federal courts.

T.L. v. United States, 443 F.3d 956, 961 (8th Cir. 2006).

Osborn v. United States, 918 F.2d 924, 731 (describing the discovery rule); Garza v. United States Bureau of Prisons, 284 F.3d 930,934 (8th Cir. 2002) (using the discovery-diligence rule in cases other than medical malpractice actions).  Thus, the court must determine when plaintiffs actually knew or with reasonable diligence should have known the existence and cause of their injury.

### III.   Analysis

In evaluating when a claim accrues, the Eighth Circuit has stated:

> Although "[a] claim does not accrue when a person has a mere hunch, hint, suspicion, or rumor of a claim, . . . such suspicions do give rise to a duty to inquire into the possible existence of a claim in the exercise of due diligence." Kronisch v. United States, 150 F.3d 112, 121 (2d Cir. 1998) (citations omitted); cf. K.E.S., 38 F.3d at 1029 (indicating that if a plaintiff has been blamelessly ignorant of an injury, his cause of action does not accrue until he knows of the fact of injury and its cause). Also, a plaintiff's assertion of when he gained actual knowledge is not determinative if he did not act reasonably and, "in effect, closed [his] eyes to evident and objective facts concerning accrual of [his] right to sue." See Chrysler Workers Ass'n v. Chrysler Corp., 834 F.2d 573, 579 (6th Cir. 1987) (interpreting statute of limitations in claim against private employer under Labor Management Relations Act).
>
> The assessment of whether a plaintiff has acted reasonably is an objective one and the conclusion varies with the facts of each particular case.

Garza v. United States Bureau of Prisons, 284 F.3d 930,935 (8th Cir. 2002).  Generally, "[o]nce a plaintiff knows or should know that he has been injured and who has inflicted the injury, 'there are others who can tell him if he has been wronged, and he need only ask.'"  Motley v. United States, 295 F.3d 820, 822 (8th Cir. 2002) (quoting United States v. Kubrick, 444 U.S. 111, 122 (1979).

Plaintiffs allege that they did not have definitive knowledge of their injury until they received the results of the DNA tests in July 2002 and January 2004.  If the court agrees and uses

the 2002 and 2004 DNA testing dates for claim accrual purposes, plaintiffs filed their administrative actions with the Department of Health and Human Services within the limitation period.[4]  Defendant argues that the cause of action accrued much earlier, in the 1970s or 1980s. Rather than refer to one specific incident, defendant cites a chronology of events which–in combination–demonstrate that plaintiffs were aware of their injury many years before the DNA tests.

    The court notes that deposition testimony establishes that, while growing up, both Beverly and Rowena heard comments and rumors from various family members, friends, and acquaintances regarding their respective parentage and the possibility that the parents took the wrong infants home from the hospital.  For example, Susie Slow Bowker told Beverly that the infant given to her at the hospital did not appear to be the same infant she saw after delivery. Defendant's Memorandum of Law in Support of Motion to Dismiss/ Motion for Summary Judgment [hereinafter "Defendant's Memorandum"] (Doc. #17) Bowker Deposition, Ex. A, at 27-28.  Rowena testified that family members told her she did not belong to Michael; rather she belonged with the Bowkers.  Defendant's Memorandum (Doc. #17) Madrigal Deposition, Ex. B, at 12-14.  Beverly testified she heard rumors that she and Rowena had been switched at birth. Defendant's Memorandum (Doc. #17) Bowker Deposition, Ex. A, at 23-25.  Some of these occurrences involved generalized teasing about not resembling family members.  The court finds that such rumors and comments do not constitute the accrual of a claim, especially because such statements were made to Beverly and Rowena when they were children and likely could not

---

[4] Plaintiffs' complaint asserts the Department of Health and Human Services has not taken any formal action on the claim.  Complaint (Doc. #1).

appreciate the significance of the remarks.

However, during the 1970s, several significant events occurred. At some point prior to 1973, Beverly testified that she and Rowena were, apparently coincidentally, both visiting other people at a hospital in Rapid City, South Dakota. Defendant's Memorandum (Doc. #17) Bowker Deposition, Ex. A, at 19. The two women were introduced, and Beverly noted the physical similarities between Rowena and Beverly's brother. Defendant's Memorandum (Doc. #17) Bowker Deposition, Ex. A, at 19-23. In 1973, Beverly traveled from South Dakota to Colorado and California and met with Grace and Michael, respectively. Beverly testified she wanted to see Grace "to find out if there were any truth to any of the rumors." Defendant's Memorandum (Doc. #17) Bowker Deposition, Ex. A, at 38. During these visits, Beverly discussed with both Grace and Michael the circumstances of her birth and the birth of Rowena. Defendant's Memorandum (Doc. #17) Bowker Deposition, Ex. A, at 37-42. Over the years, she continued to communicate with Grace and Michael because Beverly had "this nagging question. If something happened at the hospital, if something really actually happened, I really wanted to know. I just wanted to know for sure, one way or. . ." Defendant's Memorandum (Doc. #17) Bowker Deposition, Ex. A, at 41. In 1974, Beverly invited Michael and Grace to attend her college graduation. Defendant's Memorandum (Doc. #17) Bowker Deposition, Ex. A, at 40. Both Michael and Grace attended the ceremony. Defendant's Memorandum (Doc. #17) Bowker Deposition, Ex. A, at 40.

Rowena testified that sometime in the 1970s, Beverly came to Rowena's home. Defendant's Memorandum (Doc. #17) Madrigal Deposition, Ex. B, at 20-21. Rowena recalled Beverly spoke to her "about being baby switched," and Rowena asked Beverly to leave.

Defendant's Memorandum (Doc. #17) Madrigal Deposition, Ex. B, at 20-21.  Sometime in the 1970s, Rowena attempted to contact a nurse at the hospital to inquire about the circumstances of her birth, but she abandoned her efforts when she learned the nurse was deceased.  Defendant's Memorandum (Doc. #17) Madrigal Deposition, Ex. B, at 19-20.  Rowena testified that she had conversations with Grace about Grace's belief that Beverly was Grace's daughter.  Defendant's Memorandum (Doc. #17) Madrigal Deposition, Ex. B, at 17-18.

Michael testified he first met Beverly in the 1970s, when she visited him in California and told him she believed she was his daughter.  Defendant's Memorandum (Doc. #17) Ryan Deposition, Ex. C, at 14-15.  At some point after meeting Beverly in the 1970s, Michael asked his sister, a nurse, about the possibility of DNA testing or blood tests.  Defendant's Memorandum (Doc. #17) Ryan Deposition, Ex. C, at 16-18.  She advised against such testing because she felt–apparently erroneously–that such tests were unreliable, and also the testing "would just add confusion to something that was already confused."  Defendant's Memorandum (Doc. #17) Ryan Deposition, Ex. C, at 17.

This case presents a series of events in the 1970s which demonstrate plaintiffs had more than a hunch or suspicion that an injury had occurred.  Plaintiffs, especially Beverly and Michael, were actively investigating and questioning the circumstances surrounding the births of Rowena and Beverly.  Although plaintiffs did not pursue the issue in the 1970s with formal DNA testing or blood tests, they had notice of the injury.  Plaintiffs sought no DNA testing until 2002. Plaintiffs contend they did not realize technology was available for private DNA testing until recently, but the fact remains that Michael considered such tests decades earlier.  The record demonstrates that the DNA testing in 2002 and 2004 was conducted as a result of decades of

suspicion, questions, and inquiries by the plaintiffs. The 2002 and 2004 DNA testing confirmed the existence of the injury, but the series of occurrences during the 1970s show plaintiffs had reasonable knowledge of their injury and its cause.

Plaintiffs argue that such a holding "sets a dangerous precedent" in which rumors and suspicions are sufficient to start the limitations period. However, the court concludes this case presents an unusual and rare factual situation. The court's reasoning in this case rests on the series of occurrences unique to this case. All of the aforementioned events, when taken together, rise to the level of putting plaintiffs on notice of the existence and cause of their injury. They did not act with reasonable diligence in pursuing their rights. The period of limitations expired well before plaintiffs filed their administrative claims.

Plaintiff argues in the alternative that if this case is time barred, equitable tolling is appropriate. The Eighth Circuit has stated:

> We apply the doctrine of equitable tolling to FTCA claims against the government. See Niccolai v. U.S. Bureau of Prisons, Dir., 4 F.3d 691, 693 (8th Cir. 1993). Because statutes of limitations protect important interests of certainty, accuracy, and repose, equitable tolling "is an exception to the rule, and should therefore be used only in exceptional circumstances." Dring v. McDonnell Douglas Corp., 58 F.3d 1323, 1330 (8th Cir. 1995); see Irwin, 498 U.S. at 96. "The party who is claiming the benefit of an exception to the operation of a statute of limitations bears the burden of showing that he is entitled to it." Wollman v. Gross, 637 F.2d 544, 549 (8th Cir. 1980), cert. denied, 454 U.S. 893, 70 L. Ed. 2d 207, 102 S. Ct. 389 (1981).

Motley v. United States, 295 F.3d 820, 824 (8th Cir. 2002). This case demonstrates the reasons enumerated for establishing a statute of limitation period. Susie and Virgil are deceased. The medical personnel present at the Standing Rock Hospital in 1946 are retired or deceased. The personnel records have been destroyed. Medical records, beyond the basic information from the birth certificates, are unavailable. Grace Medicine apparently does not want to be involved in

the case. Plaintiffs decry the alternative theories put forth by defendant to explain the results of the paternity tests as "patently offensive." Plaintiffs' Opposition (Doc. #21). However, due to the passage of time, the scarcity of records available, and the deaths of many of the individuals involved, the facts of this case invite speculation and suggest numerous possible theories. The compelling and intriguing questions regarding *how* the injury occurred do not change the analysis of *when* the injury occurred–which remains the court's critical inquiry. The court recognizes the events of this case have profoundly impacted the lives of plaintiffs and their families, but despite the unfortunate events 60 years ago, equitable tolling is not appropriate in this case. For the foregoing reasons, defendant's motion to dismiss for lack of subject matter jurisdiction (Doc. #6) is **GRANTED**. Judgment will be entered accordingly.

Dated this 15th day of February, 2007.

          /s/ *Karen K. Klein*
          Karen K. Klein
          United States Magistrate Judge